HERBERT M. KINSLEY
v.
FRANCIS L. CHARNLEY.

*Master and Servant—Architect—Exclusive Attention—Extra Compensation—Contract under Seal—Parol Contract—Guaranty.*

1. A contract under seal can not be varied by parol.
2. For the payment of money, a contract to see it paid is, when another is to pay it, a guaranty.
3. Extra compensation can not be claimed for doing the work in question, not better than the contract calls for, but better than it otherwise would have been done.

[Opinion filed October 28, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Mr. FRANK J. LOESCH and CHARLES A. ALLEN, for appellant.

Messrs. TENNEY, HAWLEY & COFFEEN, for appellee.

GARY, P. J.  This was an action of assumpsit brought by the appellee against appellant, to recover for services alleged to have been performed as architect and superintendent of a certain building erected in the year 1885, by appellant, in the city of Chicago.

In November, 1884, appellant and appellee entered into a written contract, which was as follows:

"Whereas, Herbert M. Kinsley is about to erect a building on Adams street, in the city of Chicago, upon the following described lot, to wit: The east one-half of lot seven (7), block one hundred and twenty (120), School Section addition to Chicago, in the county of Cook and State of Illinois, to be used as a restaurant and generally in his business, and for the purpose of aiding in such work is desirous of securing the services of an architect.

"Now, therefore, it is understood and agreed by and between the said Herbert M. Kinsley and Francis L. Charnley, that the said Charnley shall make and draw the plans, specifications and drawings for the said building; the specifications to be such as can be used by the workmen erecting said building; the said Charnley is to superintend the building and see that the contractors for each and every portion therein shall complete their work in a workmanlike and satisfactory manner with due diligence; and he shall draft all contracts and specifications between the said Kinsley and said contractors, and shall see that the said building is fully completed in accordence with the plans, specifications and contracts so drawn, for all which service the said Charnley shall receive a compensation of three per cent. upon the amount of the cost of said building.

"Said Kinsley reserves the entire control of the contracts to be made, so far as the parties to the same shall be concerned and the amounts to be paid.

"And it is further agreed, in case the said Kinsley's lessor shall not secure to him the possession of the premises above described, on or before the 23d day of February, A. D. 1885, that then and in that event this contract shall cease, and the compensation to said Charnley for so much work as he then shall have done shall be the sum of $500.

"In witness whereof, the parties hereto have hereunto set their hands and seals this    day of November, A. D. 1884.

"F. L. CHARNLEY, [SEAL.]
"H. M. KINSLEY. [SEAL.]"

The total cost of the building referred to in the above contract was $146,571.04.

The controversy arises over the claim made by the appellee for an extra two per cent. upon the cost of the building, which claim, as he states in his testimony, stands upon the following circumstances:

"Q. State whether or not you made any other or additional contract or agreement with Mr. Kinsley than the one that has been introduced in evidence. When was it, and where was it?

"A. It was a verbal agreement. It was about the time or immediately after the roof was put on; I was going along Dearborn street; it was in July—soon after the middle of July; I think it was in 1885. I saw Mr. Kinsley across the street and he came over and said to me : ' Charnley, I don't believe we are ever going to get into that building in November, and I must open in November because then my harvest commences, and I wish to open under favorable circumstances.' He said: 'I don't believe they are going to get that done in November. The only way they will get it done will be for you to go there and give your whole time and attention to that building, because if you don't we will never get in there in that time, and if we don't get in there in November, we might just as well stop now.' I told him I could not very well do that because I would have practically to drop my other business; I told him I was doing some work for Chapin. Mr. Chapin was building his house at that time; he wanted me to give my attention to his building. Kinsley said he would see Mr. Chapin and that he was willing to pay me for it. He said: 'I must have that building done in November, and I want you to give your whole time to it.' ' Well,' I said, ' If you are willing to pay me for it, and Chapin is willing to relieve me of the personal superintendence of his building, I will do it.'

"I told him I never had any doubt but that the building would be completed according to the contract. I went there to the building. Kinsley got a boy to run errands for me and he got a desk there for me, and after we got the roof on I made my office practically in that building. After this conversation with Kinsley I was at the building all day, from the time we got the roof on until we got through; the building was ready to open the 15th of November."

The contract is under seal and therefore can not be varied by parol. K. & S. W. R. R. v. Fitzgerald, 17 Ill. App. 525, and I. C. R. R. v. B. & O. R. R., 23 Ill. App. 531, and many cases cited in those.

The contract provides that the appellee shall " superintend the building and see that the contractors for each and every portion therein shall complete their work in a workmanlike and satisfactory manner, with due diligence." It bound the appellee to do whatever was in his power to make the contractors do their work as well and as quickly as their contracts required. Literally read it made him a guarantor that they would do so.

For the payment of money, a contract to see it paid is, when another is to pay it, a guaranty. But it is not necessary to so construe this contract.

The claim of the appellee is, in effect, that he took more pains to perform the contract he had made, than he would have done if the appellant had not urged him to do it. There is nothing in the case indicating that the work was done better or quicker than the contractors had engaged to do it.

That a contract, whether sealed or not, does not preclude compensation for extra work, is admitted ; but that extra compensation can be claimed for doing, not better work than the contract calls for, but better than otherwise would have been done, is not the law.

All the evidence of custom of architects, for the purpose of construing the words of the written contract, was incompetent. Sigsworth v. McIntyre, 18 Ill. 126.

The judgment must be reversed and the case remanded.

*Reversed and remanded.*